UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGORY T. WILLS,<br>    *Defendant*. | No. 3:20-cr-169 (JAM) |

**ORDER DENYING MOTION TO SUPPRESS**

The defendant Gregory Wills moves to suppress evidence seized during the execution of a search warrant at his friend's house where he regularly stayed as an overnight guest. According to Wills, the law enforcement officers who conducted the search exceeded the scope of the warrant when they searched a storage compartment that was located immediately outside the back of the home. Although the warrant did not mention or describe the compartment, I conclude that it was within the curtilage of the home and that the scope of the search warrant implicitly included areas and structures, such as the compartment, that were within the curtilage of the home. I further conclude that the officers did not exceed the scope of the warrant by using a drug-detection dog to locate items that the warrant authorized them to search and seize. Accordingly, I will deny the motion to suppress.

### BACKGROUND

A federal grand jury has returned a superseding indictment against Wills charging him with possession and distribution of fentanyl, possession of a firearm in furtherance of a drug-trafficking crime, and possession of a firearm by a convicted felon.[1] Several of these charges are based on the execution of a search warrant on September 23, 2020, at the right-side residence of a duplex house at 44 Allview Avenue in Norwalk, Connecticut.[2]

---

[1] Doc. #13 (Superseding Indictment).
[2] Doc. #43-2 at 6–24.

1

According to an affidavit in support of the warrant, the FBI was investigating Wills for drug possession and distribution.[3] The affidavit set forth facts to show that Wills was conducting drug transactions from the right-side residence of the duplex at 44 Allview Avenue.[4]

The search warrant described the property to be searched as the right-side of the duplex house at 44 Allview Avenue.[5] It included a photograph below of the front of this property.[6]



The search warrant affidavit described how both sides of the duplex have a main floor, upper level, and a basement with a walk-out door to the rear of the building.[7] Neither the warrant nor the affidavit in support of the warrant described or referenced any additional structures or outbuildings on the property.

When law enforcement officers executed the search warrant, they observed a locked, closet-like storage compartment immediately adjacent to the basement at the rear of the right side of the house.[8] As photographs taken at the time of the search show, the compartment is either

---

[3] *Id.* at 11 (¶ 8).
[4] *Id.* at 15–18 (¶¶ 20–26).
[5] *Id.* at 7 (Attachment A).
[6] *Ibid.*
[7] *Id.* at 18–19 (¶ 27).
[8] Docs. #43-3 at 4, #53-1 at 2–3. The parties disagree whether this structure should be labeled a "shed" or an "enclosed storage closet." *Compare* Doc. #51 at 4 ("While the defendant has called the storage area a 'shed,' it is actually an enclosed storage closet up against the wall of the basement."), *with* Doc. #58 at 3–4 ("[T]he storage area is clearly a separate structure and does, in fact, meet the definition of a shed.").

attached to or just inches from the rear wall of the house, and it lies beneath an overhang from the house and has a door that opens a few feet from the basement walk-out door.[9]

 

The officers conducted an initial protective sweep of the property, and they broke a padlock on the outside of the compartment to ensure no one was hidden inside.[12] A police service dog arrived and began to work his way around the duplex's right side.[13] After the dog alerted to the presence of narcotics within the storage compartment, officers found both drugs and guns inside.[14]

Wills filed a motion to suppress the evidence from the storage compartment.[15] But because the record did not suggest that Wills lived at the duplex, I entered an order to show cause for supplemental briefing to address whether Wills had standing to challenge the search.[16] Wills responded by filing an affidavit attesting that one of his best friends lived at 44 Allview Avenue and that he was a regular overnight guest there.[17]

---

[9] Doc. #53-1 at 2–3.
[10] *Id.* at 2.
[11] *Id.* at 3.
[12] Docs. #43-3 at 4, #43-4 at 3. Wills does not challenge the protective sweep or the grounds for the officers to believe that there could be someone inside a padlocked storage area.
[13] Doc. #43-4 at 3–4.
[14] *Id.* at 4.
[15] Doc. #43.
[16] Doc. #59.
[17] Doc. #60-1 at 1; *see also Minnesota v. Olson*, 495 U.S. 91 (1990) (person who was overnight guest at time of

**DISCUSSION**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and it further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. To effectuate this right, courts have created an exclusionary rule "that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009); *United States v. Jones*, 43 F.4th 94, 110–11 (2d Cir. 2022).[18]

### *Whether law enforcement officers exceeded the scope of the warrant by searching the storage compartment*

Wills argues that the storage compartment was a "separate structure" not covered by the warrant to search the right-side unit at 44 Allview Avenue.[19] In response, the Government argues that "the law is well settled that a warrant authorizing the search of a residence also authorizes the search of the curtilage of that residence, including the surrounding property and separate structures on the property."[20]

The parties' framing of the arguments requires me to address two questions. First, was the storage compartment within the curtilage of the right-side residence of the duplex? If so, does a search warrant for a home authorize officers to search structures within the curtilage of the residence even if there is no mention of such structures in the warrant?

---

police entry into home had standing to challenge officers' entry). It does not appear from the record how frequently Wills was an overnight guest or that Wills was an overnight guest at the residence as of the very early morning when the warrant was executed. But because the Government has not pursued any further challenge to Wills' standing as an overnight guest, there is no need for me to address the issue further in this ruling.
[18] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions. Nor do case citations include subsequent history not relevant for present purposes.
[19] Doc. #43-1 at 6.
[20] Doc. #51 at 5–6.

The area immediately around a home—its curtilage—is entitled to Fourth Amendment protection. *See Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018). The Supreme Court has recognized the common-law principle that the curtilage is considered "part of the home itself for Fourth Amendment purposes." *Florida v. Jardines*, 569 U.S. 1, 6 (2013).

The Supreme Court has identified four primary factors to consider when deciding whether an area constitutes curtilage: (1) "the proximity of the area claimed to be curtilage to the home;" (2) "whether the area is included within an enclosure surrounding the home;" (3) "the nature of the uses to which the area is put;" and (4) "the steps taken by the resident to protect the area from observation by people passing by." *United States v. Dunn*, 480 U.S. 294, 301 (1987); *see also United States v. Alexander*, 888 F.3d 628, 632–34 (2d Cir. 2018) (applying *Dunn* and finding that a driveway area outside a shed behind the house was part of the curtilage).

As to the first two factors, photographs of the storage compartment show that it was located immediately behind the rear of the duplex—either attached to or within inches of the duplex's back wall and located underneath an overhang jutting out from the back of the duplex.[21] The compartment was as proximate as can be to the outside of the home and within the home's immediate enclosure. As to the third factor, the photographs show that the compartment was used for storage of personal possessions, including a motorbike.[22] And as to the fourth factor, the compartment's location at the rear of the duplex—with opaque siding and a padlock attached—suggests that steps were taken to protect it from observation by people passing by.[23] All in all, the storage compartment was doubtlessly within the curtilage of the right-side residence of the duplex.

---

[21] *See* Doc. #53-1 at 2–3.
[22] *See ibid.*
[23] *See* Docs. #43-3 at 4, #43-4 at 3, #53-1 at 2–3.

Noting that the structure at issue here was a two-family residence, Wills argues that when considering "what counts as curtilage, courts have distinguished single-unit and multi-unit buildings" and that "'[i]n a modern urban multifamily apartment house, the area within the 'curtilage' is necessarily more limited than in the case of a rural dwelling subject to one owner's control.'"[24] But it is hard to see how this argument helps Wills. He has standing in this case only because he claims he was an overnight guest at his friend's residence at the duplex that was searched.[25] He has not asserted a possessory interest in the shed itself or any of the items inside. So if the storage compartment is *not* within the curtilage of the right-side residence of the duplex that was searched, Wills has no standing even to complain that the search of the compartment violated his own Fourth Amendment rights.

Because the storage compartment was within the curtilage, the next question is whether law enforcement officers exceed the scope of a search warrant for a residence when they search structures within the curtilage despite the lack of any reference in the warrant to such structures. This is a question of law that neither the Supreme Court nor the Second Circuit has yet to answer. But at least six federal appeals courts have uniformly concluded that a search warrant need not explicitly authorize law enforcement authorities to search outbuildings and structures within the curtilage.[26] As a leading treatise observes, "if the place to be searched is identified by

---

[24] Doc. #58 at 3 (quoting *United States v. Arboleda*, 633 F.2d 985, 992 (2d Cir. 1980)).
[25] Doc. #60-1 at 1 (¶ 4).
[26] *See United States v. Babin*, 817 F. App'x 23, 25 (5th Cir. 2020) (*per curiam*) ("Because, as the district court concluded, the warrant authorized a search on the premises of the residence at the designated address, which was correctly stated in the warrant, it also authorized the search of a detached shed on that premises."); *United States v. Montieth*, 662 F.3d 660, 670 n.2 (4th Cir. 2011) (despite fact that "shed in the backyard … was not specified in the warrant," the "district court did not err … in concluding that the shed was within the curtilage of the home[] and that the warrant for the residence was therefore sufficient to include within its scope the shed that is within the privacy fence and close to the residence itself"); *United States v. Paull*, 551 F.3d 516, 523 (6th Cir. 2009) ("[A] warrant for the search of a specified residence or premises authorizes the search of auxiliary and outbuildings within the curtilage."); *United States v. Cannon*, 264 F.3d 875, 881 (9th Cir. 2001) (search warrant for home extended by implication to storage rooms located in a separate rear building behind the house because "[a] search warrant for a residence may include all other buildings and other objects within the curtilage of that residence, even if not specifically referenced in the search warrant"); *United States v. Earls*, 42 F.3d 1321, 1326–27 (10th Cir. 1994) (a

street number, the search is not limited to the dwelling house, but may also extend to the garage and other structures deemed to be within the curtilage and the yard within the curtilage." Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.10(a) (6th ed. 2022).

These decisions make good sense. Why is curtilage protected by the Fourth Amendment? Because it is part of the home. If a search warrant authorizes a search of the home, it necessarily authorizes a search of the curtilage as an inherent part of the home.

Wills does not cite or acknowledge any of the precedent against him. Instead, he relies on *United States v. Heldt*, 668 F.2d 1238 (D.C. Cir. 1981) (*per curiam*), which concerns the scope of a search warrant for an office space, not a home and its curtilage. *Id.* at 1262–66.

In short, even if I assume that Wills is correct that the storage compartment was a separate structure or outbuilding on the property, it was within the scope of the curtilage. And law enforcement officers do not exceed the scope of a search warrant for a home when they search areas, such as the storage compartment in this case, that are within the curtilage of the home.

### *Use of drug-detection dog to execute search warrant*

Wills further argues that "police may not bring a drug detection dog along on the search in order to broaden its scope beyond what is authorized by the warrant."[27] But, as noted above, the law enforcement officers did not broaden the scope of the warrant when they searched the storage compartment.

---

search warrant that listed only the premise's address necessarily permitted a search of a "detached garage, shed, and office" within the residence's curtilage); *United States v. Griffin*, 827 F.2d 1108, 1113–15 (7th Cir. 1987) (search warrant for premises including house and detached garage also included by implication a tool-shed and yard); *see also United States v. Dowling*, 2019 WL 1053607, at *8 (D.V.I. 2019) (noting that "numerous courts have held that a search warrant for a defendant's 'residence' or 'premises,' also authorizes the search of the accompanying curtilage—even if the latter is not specifically listed in the warrant").

[27] Doc. #43-1 at 7.

7

If Wills means to argue more generally that the police may not bring a drug-detection dog to assist them in the execution of a search warrant, he does not cite any precedent to support this claim. Although the Fourth Amendment requires a warrant to describe with particularity the place to be searched and property to be seized, it does not limit what means the police may use during the course of executing the warrant to locate items that are within the scope of the warrant.

The two cases that Wills cites have nothing to do with the scope or execution of search warrants. *See Florida v. Jardines*, *supra*; *United States v. Thomas*, 757 F.2d 1359, 1366–67 (2d Cir. 1985). Instead, these cases involve whether the police *without a warrant* may use a drug-detection dog just outside a home to identify the presence of contraband inside the home. They are not relevant to the question of whether the police who have a search warrant may use a dog to assist them in locating items within the scope of the search warrant.

Lastly, there is no need for an evidentiary hearing. The relevant facts concerning the issuance and contents of the search warrant, the location and characteristics of the storage compartment, and the use of a drug-detection dog are not disputed. The undisputed facts demonstrate that law enforcement officers did not exceed the scope of the search warrant when they searched the storage compartment and did so with the assistance of a drug-detection dog.

## CONCLUSION

For the reasons set forth above, the Court DENIES the motion to suppress (Doc. #43). It is so ordered.

Dated at New Haven this 11th day of October 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge